UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **PRESTON WOOD**, individually and on behalf of all others similarly situated, *Plaintiff*, v. **TTI CONSUMER POWER TOOLS, INC** *Defendant*. | Case No.: 2:25-cv-13291-RMG **CLASS ACTION JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff, Preston Wood ("Plaintiff"), individually and on behalf of all others similarly situated ("Class"), by and through their attorneys, alleges the following causes of action, upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge upon the Defendant, TTI Consumer Power Tools, Inc ("TTI" or "Defendant"):

## NATURE OF THE ACTION

1. This is a consumer class action arising out of Defendant TTI Consumer Power Tools, Inc.'s manufacture and sale of "about 64,000 units of the RIDGID 18-volt nail gun that is subject to a recall issued on July 31, 2025[1] (the "Product(s)").

2. The dual action engagement system on the framing Nailer can malfunction and involuntarily discharge a nail by pulling the trigger alone, posing a laceration hazard to consumers

---

[1] https://www.cpsc.gov/Recalls/2025/TTI-Consumer-Power-Tools-Recalls-RIDGID-Framing-Nailers-Due-to-Laceration-Hazard

(the "Defect").

3. The Nailer should require both the work piece contact element (nose-piece) to be depressed and the trigger to be pulled at the same time in order to discharge a nail[2].

4. The Products were advertised, sold, and installed across the United States without adequate warnings or safeguards related to the Defect. Defendant provided no warning of the Defect, and Plaintiff would not have purchased said item if they had known of the Defect.

5. Other manufacturers formulate, produce, and sell non-defective framing Nailers with production methods that do not cause the Products to fire without triggering the necessary safety mechanisms that would prevent a laceration hazard to users.

6. Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

7. All consumers who purchased the worthless and dangerous Products have suffered losses.

8. Defendant's failure to disclose the Defect at the time of sale – and its refusal to assume responsibility for the resulting effects- constitutes consumer deception, unjust enrichment, breach of contract, and breach of warranties. Plaintiff and the Class would not have purchased the Products, or would have paid significantly less, had they known of the Defect and limited recourse available.

9. As a result of the above losses, Plaintiff seeks damages and equitable remedies on behalf of their selves and the Class.

## FACTUAL BACKGROUND

---

[2] *Id.*

10. July 31, 2025, the United States Consumer Product Safety Commission ("CPSC") announced a recall of the Products due to the Defect[3].

11. This recall involves the RIDGID 18Volt Brushless 21-Degree Framing Nailer and the RIDGID 18Volt Brushless 30-Degree Framing Nailer. The model and serial numbers are located on the data plate found either on the side of the nail tray/magazine where the fasteners are loaded or on the bottom of the Nailer where you insert the battery.

12. The product was sold at Home Depot and Direct Tools Factory Outlet stores nationwide, in Canada, and online at www.homedepot.com and www.directtoolsoutlet.com from July 2021 through May 2025.

13. According to the Home Depot in store recall notice, the dual action engagement system on the Nailers can malfunction and involuntarily discharge a nail by pulling the trigger alone, posing a laceration hazard to consumers. The nailer should require both the work piece contact element (nose-piece) to be depressed and the trigger to be pulled at the same time in order to discharge a nail.

14. The CPSC did not report any injuries though the named plaintiff advises that he was in fact injured using the product.

15. The Products sold for $330-$390.

16. Despite the Recall, the Defendants are not offering a refund. Instead, they require consumers to mail them the nail gun, and they will provide a software update and return the Nailer. This remedy is inadequate. First, there are no assurances that the remedy will be adequate. Second, while the Defendant will provide a prepaid shipping label, it is incumbent upon the consumer to obtain adequate boxing and packaging material at their own expense, and on their own time, to

---

[3] *Id.*

have shipped to the Defendant. Third, there is no estimated return time and the consumer would be deprived of the use of a nail gun during the interim or would be required to buy another similar product to use. A refund is the only adequate remedy.

17. The Plaintiff did not bargain for having to obtain packaging and shipping the product back to the Defendant when they made the purchase.

18. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing consumer products for many years, including producing and manufacturing the recalled Products.

19. Defendant is in the unique and superior position of knowing how its products are manufactured and the steps needed to produce safe products.

20. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing, and eventual end-use, of its Products. The only possible way for Plaintiff and the Class Members to discover the Defect would be to conduct their own testing of the Products prior to purchase. No reasonable consumer would undertake such a testing prior to purchase, nor would any reasonable vendor allow such testing.

21. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about its Products.

22. Thus, Defendant's deceptive omissions regarding the Products' Defect are likely to deceive and mislead consumers and the public, as such omissions have already deceived and misled Plaintiff and the Class Members.

23. Defendant's deceptive omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

24. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading omissions.

25. In making the false, misleading, and deceptive omissions described herein, Defendant knew and intended that consumers would pay a premium for the Products marketed without the likelihood that the nail gun would unexpectedly fire over comparable products not so marketed.

26. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

    a.    Paid a sum of money for Products that were not what Defendant represented;

    b.    Paid a premium price for Products that were not what Defendant represented;

    c.    Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

    d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

    e.    Were denied the benefit of the properties of the Products Defendant promised;

27. Had Defendant not made the false, misleading, and deceptive omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332, because (1) this is a class action wherein the

amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class, including Plaintiff, who are citizens of states different from Defendant, and (4) there are more than 100 putative Class Members.

29.     This Court has personal jurisdiction over Defendant as it has its principal place of business within Georgia and within the jurisdiction of this District and Court. Defendant has also purposefully availed itself to the laws, rights, and benefits of the this District.

30.     Venue is proper under 28 U.S.C. 1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

31.     Plaintiff Preston Wood is a resident and citizen of Spring, Texas. Spring, is located in Harris County, Texas.

32.     Plaintiff Wood purchased the RIDGID R09894 18 volt Brushless 21 Degree framing Nailer. He experienced the misfiring while engaged in normal use and lacerated his hand. He attempted to contact the Defendant and was unsuccessful in obtaining an adequate remedy.

33.     Defendant is a Delaware Company. However, it has a RYOBI Distribution Center located at 100 Ryobi Drive, Anderson South Carolina 29621. It's Registered Agent within South Carolina is Corporation Service Company located at 100 Coastal Drive, Suite 210, Charleston Sc 29492.

34.     Defendant specializes in the production of tools for individual consumers to use.

## CLASS ALLEGATIONS

35. Plaintiff brings this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

36. The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**: "All consumers who purchased the recalled Products with model number R09894 OR R09895 between July 2021 and May 2025.

37. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

38. Plaintiff reserves the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

39. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices. It is estimated that 64,000 unites were recalled.

40. <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Member

41. <u>Typicality</u>: Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

42. <u>Adequacy</u>: Plaintiff is an adequate Class representative because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

43. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

44. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

    f. This class action will assure uniformity of decisions among Class Members;

    g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

    h. Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

      i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

45. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### COUNT I: BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### S.C. Code. Ann . §36-2-314

46. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

47. S.C. Code Ann. §36-2-314 governs the implied warranty of merchantability in sales contracts. It provides that, unless excluded or modified, a warranty that goods shall be merchantable is implied if the seller is a merchant with respect to goods of that kind.

48. The Defendant is a "seller" as contemplated by the governing statute and the counter ovens are "goods" according to statute.

49. The safety mechanism of the Nailer was defective and presented a laceration hazard to consumers who used the product as intended by having it misfire and potentially injuring consumers. As such, the defect rendered the product unmerchantable.

50. The Defect with Nailer's safety mechanism rendered the Product "unmerchantable" at the time of sale. Such lack of merchantability is a breach of warranty

51. This breach both factually and proximately caused damages to Plaintiff through their loss of funds and the deprivation of the benefit of the bargain.

52. Additionally, Plaintiff Wood himself, experienced the defect firsthand and suffered a

laceration.

## COUNT II: UNJUST ENRICHMENT

53. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

54. Plaintiff asserts this claim in equity or quasi contract should the court deem there is no other binding contract between the parties available that would provide plaintiff with a remedy. The plaintiff (1) conferred a benefit on the defendant in the form of monetary payment either directly or through authorized third party retail outlets.; (2) the defendant had knowledge of the benefit by receiving monies for the units sold.; (3) the defendant voluntarily accepted and retained the benefit-indeed, even with this massive recall they are not offering a refund; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

55. These benefits were not donations or gifts to Defendant; such benefits were given in exchange for Products.

56. As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted wrongful benefits from Plaintiff.

57. In so doing, Defendant acted with conscious disregard for the rights of the Plaintiff and Class Members.

58. Plaintiff and Class Members paid for Products that were safe, and free from the Defect. Instead, Plaintiff and Class Members received Products that are unsafe and have the Defect.

59. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

60. Defendant's unjust enrichment is traceable to, and resulted directly and proximately

11

from, the conduct alleged herein.

61. In light of the monetary benefit conferred upon the defendant, its knowledge of numerous complaints regarding the defect, and its inadequate remedy to address the defect, having them retain the revenue received for the sale of the defective Product would be inequitable and unjust.

62. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them, plus interest thereon.

63. Plaintiff and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

## JURY DEMAND

64. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and Class Members demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of their selves and the Class, prays for judgment as follows:

A. For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F.   For an order of restitution and all other forms of equitable monetary relief;

G.   For injunctive relief as pleaded or as the Court may deem proper;

H.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.   For an order providing for all other such equitable relief as may be just and proper.

Dated: November 5, 2025.              Respectfully Submitted,

/s/ Paul J. Doolitlle
Paul J. Doolittle, Esq.
SC Fed. Bar ID 6012
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: Paul.doolittle@poulinwilley.com
           cmad@poulinwilley.com

*Attorney for Plaintiff & Proposed Class*